UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re                                                                           Case No.: 8-05-87603-478

    POSEIDON POOL & SPA                                   Chapter 11
    RECREATIONAL, INC.,

                    Debtor.
---------------------------------------------------------X

**MEMORANDUM DECISION DENYING DEBTOR'S MOTION
FOR RECONSIDERATION OF THE COURT'S DECEMBER 7, 2005 ORDER**

WEINBERG, GROSS & PERGAMENT LLP
Attorneys for Debtor and Debtor in Possession
by Marc A. Pergament
400 Garden City Plaza, Suite 403
Garden City, NY 11530

BERKMAN, HENOCH, PETERSON & PEDDY, P.C.
Attorneys for Timothy Greco,
on behalf of Steamroller Properties, Ltd.
By Ronald M. Terenzi and Cara M. Goldstein
100 Garden City Plaza
Garden City, NY 11530

I.      Background.

Poseidon Pool & Spa Recreational, Inc. (the "Debtor") filed for chapter 11 relief under title 11 of the United States Code (the "Bankruptcy Code") on October 7, 2005. On December 7, 2005, the Court entered an order extending the time in which the Debtor must assume or reject a lease of nonresidential real property and requiring the Debtor to set aside all postpetition rent due under such lease in a separate escrow account to be held by the Debtor's counsel and to pay into the same escrow account the rent due under such lease on an on-going basis (the "December 7, 2005 Order"). The Debtor subsequently brought a motion requesting the Court to reconsider its December 7, 2005 Order (the "Motion") and Steamroller Properties, LLC, the landlord with respect to the non-residential real property, filed an objection to the Debtor's Motion. The Court held two days of evidentiary hearings to determine the terms of the lease at issue. On April 10, 2006, this Court held a continued hearing on the Debtor's Motion and parties were directed to submit supplemental documents regarding the Debtor's Motion. This Memorandum Opinion addresses the issue of whether the Debtor's obligation to pay rent under of the lease is abated and excused under New York law as the Debtor argues or whether the Debtor should be required to pay use and occupancy to its landlord while the Debtor is in bankruptcy.

II.     Findings of Fact.

The Debtor was formerly owned by Timothy Greco ("Greco") and Joseph Gartner ("Gartner") as principals and shareholders. During the fall of 2004, Greco agreed to sell his right, title and interest in his common shares in the Debtor (which represented 50 percent of the Debtor's issued and outstanding capital shares) back to the Debtor in exchange for $17,500 in cash, a $120,000 consulting agreement with the Debtor and a $600,000 promissory note guaranteed by Gartner and the Kathleen Gartner Irrevocable Trust (the "Gartner Trust"), which is owned by Gartner's wife and for which Gartner acts as trustee. This stock purchase agreement was signed in January of 2005. Around the same time, Steamroller Properties, Ltd. (the "Landlord"), which is controlled by Greco and the Gartner Trust, negotiated a lease for 25 Ruland Road, Melville, New York (the "Premises") with the Debtor as Lessee (the "Lease") where the Debtor conducts its business. The Lease provides for the payment of an initial fixed minimum annual rent of $432,000 to be paid on a monthly basis of $36,000 per month, together with any additional rent as set forth under the Lease. Such minimum annual rent obligation would increase 2.5% per year over the previous minimum annual rent. The Debtor has also leased an adjacent warehouse for storage pursuant to a lease with another landlord. The Debtor has represented that it is current with respect to the lease for the adjacent warehouse and that lease is not the subject of this Motion.

Steamroller as landlord of the Premises derives its sole source of revenue from the rental income of the Premises under this Lease. The Premises is also subject to a mortgage held by Vermont Partners, Ltd. (the "Vermont Partners"), whose principal is a personal friend of Gartner. The mortgage by Vermont Partners served to refinance the Premises and to satisfy a first mortgage previously held by Fleet Bank, N.A. As part of the refinancing the Landlord was required to pay a prepayment penalty of $60,000 to Fleet Bank, which was guaranteed by the Debtor.

The Lease between the Debtor and the Landlord contains an unusual provision under

paragraph 7 (Subordination) stating that:

> "[n]otwithstanding anything contained herein to the contrary, should Landlord be in default of its obligations pursuant to any Mortgage encumbering the premises, Tenant's obligations hereunder shall be abated until such time as Landlord is in compliance with its Mortgage obligations."

From March of 2005 when the first rental payment under the Lease was due, Gartner caused the Debtor to fail to pay rent due with respect to the Premises. Gartner had caused the Landlord to transfer to Colson Services Corp. which appears to be a servicing agent, funds in the amount of $6,083.34 on two separate occasions in February of 2005, and Gartner caused additional funds to be transferred on April 18, 2005. A check was made out to Steamroller by the Debtor on February 28, 2005 in the amount of $1,000 regarding a balance on a second mortgage held by Long Island Development Corp. In June of 2005, Gartner transferred a total of $12,083.34 from the Debtor's account to the Landlord's account and then Gartner transferred $12,583.34 to Colson Services Corp. on behalf of Steamroller. In addition, the Debtor wired to Jospeh Petteruti, Jr. on March, 31, 2005 funds in the amount of $7,116.61. It is uncertain to which obligation this wire relates. On June 30, 2005, Bank of America (formerly Fleet Bank), debited the $60,000 owing by the Landlord from the Debtor's account as the Debtor was a guarantor of Steamroller's obligation. The Debtor has failed to make any other payments to the Landlord.

Because the Debtor has not consistently paid rent to the Landlord under the Lease and payments that were made fell short of the required rent amount due, the Landlord has been unable to meet its obligations with respect to its mortgagees. On July 20, 2005, Vermont Partners declared a default of the first mortgage because mortgage payments for June and July of 2005, including late fees, were not made and a default notice was issued to the Debtor and the Landlord. Although Vermont Partners has not yet commenced foreclosure proceedings, Vermont Partners has obtained an order from this Court on March 20, 2006 granting it relief from the automatic stay to proceed with a foreclosure action against the Premises in New York state court and to join the Debtor as a defendant and necessary party in such foreclosure action.

As additional background regarding the relationship between the Debtor and the Landlord, the Court notes that in connection with his dispute with Greco, Gartner deactivated the Landlord's original bank accounts and opened new bank accounts at undisclosed locations, excluded Greco from the day-to-day operations of the Landlord and denied Greco access to the Landlord's books and records which is contrary to the signed agreement between the parties regarding the operations of the Landlord. Under the operating agreement with respect to the Landlord, the right to manage, control and conduct the business and affairs of the Landlord is vested in Greco and Gartner, jointly and not individually, as managers of the Landlord. On December 19, 2005, Greco moved by Order to Show Cause before the Supreme Court of New York (the "State Court") for the dissolution of Steamroller Properties, Ltd. Pursuant to the Order to Show Cause, Greco was appointed Receiver of Steamroller Properties, Ltd. and was empowered to conduct the business of Steamroller

Properties, Ltd. On December 30, 2005, Gartner and the Gartner Trust filed a cross-motion to dismiss Greco's action to dissolve Steamroller Properties, Ltd. Through this cross-motion, Greco learned that Steamroller Properties, Ltd. had been dissolved on May 17, 2005 and that Steamroller Properties, LLC ("Steamroller LLC") was created on June 3, 2005 without his knowledge or consent. Based on this new information, Greco filed a new petition with the State Court to dissolve Steamroller LLC and to be appointed receiver of Steamroller LLC. On February 21, 2006, the State Court signed an Order to Show Cause restraining Gartner from operating the business of Steamroller LLC and from taking or transferring any income/assets of Steamroller LLC and directing the Debtor, Gartner and the Gartner Trust to show cause why an order should not be issued (I) dissolving Steamroller LLC, (ii) appointing Greco as receiver of Steamroller LLC and (iii) ordering the turnover of bank records, statements, etc. of Steamroller LLC to the receiver. The issues relating to the February 21, 2006 Order to Show Cause is still pending before the State Court. Therefore, while the members of the Landlord are Greco and the Gartner Trust, it is Greco that has filed an objection to the Debtor's Motion on behalf of the Landlord. Given that Gartner is restrained from operating the business of Steamroller LLC under the February 21, 2006 Order to Show Cause, arguably, only Greco has the ability to act on behalf of Steamroller.

The Debtor has not complied with the order of this Court directing the Debtor to place the base amount of rent required under the Lease into an escrow account on a monthly basis, insisting that pursuant to paragraph 7 of the Lease, payment from the Debtor to the Landlord is abated and no payment is due to any party. The Debtor further states that the issue between the Debtor and the non-Debtor Landlord belongs only in State Court and not before this Court.

The Debtor has argued that the Court should defer to State Court because the foregoing issues relating to the terms of the Lease and the disputes relating to Greco's and Gartner's respective interest in, and control of, the Debtor and the Landlord are matters of New York law. While the Court agrees any dispute between Greco and Gartner regarding their respective interests in the Debtor and the Landlord, including Steamroller LLC, are matters for State Court, this Court has jurisdiction over issues relating to the Debtor's obligations under the Lease because the interpretation of the terms of the Lease affects the Debtor's ability to remain on the Premises and the conditions under which the Debtor may extend the time to assume or reject the Lease under Section 365 of the Bankruptcy Code.

III.    Discussion.

    A.    Jurisdiction.

This Court has jurisdiction of the Debtor and the issues raised pursuant to the Debtor's Lease with the Landlord.

Bankruptcy courts may hear and determine all cases under title 11 of the United States Code and all core proceedings arising under title 11, or arising in a case under title 11, including, but not limited to, matters concerning the administration of the estate, the allowance or disallowance of claims against the estate, orders approving the use or lease of property, and other proceedings

affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. 28 U.S.C. § 157(b). Moreover, under 11 U.S.C. § 105(a), the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code, including taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Contrary to the Debtor's assertion that the issue between the Debtor and the non-Debtor Landlord belongs in State Court, the Court finds the issue to be a core matter related to this chapter 11 case. The Court has jurisdiction over matters concerning the administration of the Debtor's estate and matters affecting the premises on which the Debtor operates and conducts its business, including the lease with respect to such premises, are core matters. Moreover, matters concerning the premises on which the Debtor operates relate to the operation and reorganization of the chapter 11 debtor, and therefore, clearly comes within the jurisdiction of the bankruptcy court.

Under Section 365(a) of the Bankruptcy Code, a debtor, subject to the court's approval, may assume or reject any executory contract or unexpired lease. To the extent there has been a monetary default under an executory contract or unexpired lease, the debtor may not assume such contract or lease unless at the time of assumption of the lease, the debtor cures, or provides adequate assurance that the debtor will promptly cure, such default and provides adequate assurance of future performance under such contract or lease. 11 U.S.C. § 365(b)(1).

Pursuant to the Debtor's Motion, the Debtor argues that although it has ceased to pay rent under the Lease, under paragraph 7 of the Lease, the Debtor's obligation to pay rent to the Landlord is abated if there is a default in the Landlord's mortgage payments with respect to the Premises. Accordingly, because the Landlord has defaulted on its mortgage obligations to Vermont Partners with respect to the Premises, the Debtor has no obligation to pay rent under the Lease until the Landlord has cured its default under the mortgage. Therefore, the Debtor argues that (1) it should not be required to pay rent into the escrow account of Debtor's counsel and (2) if the Court finds that the Debtor remains obligated to pay such postpetition rent under the Lease, then the Debtor's obligation should commence as of January 1, 2006 as opposed to December 7, 2005.

Although the Debtor also raised the issue that under the Lease the Debtor's obligation to pay rent is mitigated because there is a loss of use of part or all of the Premises as a result of a violation with respect to the Premises issued by the Town of Huntington on May 11, 2005, the Debtor argued that this issue is superceded by the abatement provision under paragraph 7 of the Lease. Accordingly, there has been no evidentiary hearing in regard to this.

Greco objected to the Debtor's Motion arguing, *inter alia*, that pursuant to Bankruptcy Rule 9023, which incorporates Rule 59 of the Federal Rules of Civil Procedure, the Debtor's Motion was untimely as the Motion was filed on December 23, 2005, more than ten days after the entry of judgment of the Court's December 7, 2005 Order. Under Rule 59 of the Federal Rules of Civil Procedure, any motion to alter or amend a judgment shall be filed no later than 10 days after entry of judgment. In addition, Greco argues that the Motion failed to provide any legal basis on which

such relief could be granted under Bankruptcy Rule 9024, which incorporates Rule 60 of the Federal Rules of Civil Procedure, in that the Debtor presented no manifest error of law or facts or newly discovered evidence that would warrant a reconsideration of the Court's December 7, 2005 Order. Under Bankruptcy Rule 9024, a court "may relieve a party or a party's legal representative from final judgment, order or proceedings for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgement." Although the Debtor failed to comply with Bankruptcy Rules 9023 and 9024, the Court did hear testimony and finds the Debtor has not shown any newly discovered evidence, mistake or fraud. Although this may be sufficient grounds to dismiss this Motion, the Court chooses to addresses the heart of the Debtor's arguments.

In connection with the Debtor's Motion, the Court shall consider the effect of the abatement provision in paragraph 7 of the Lease and determine whether the Debtor is obligated to cure its default under the Lease in accordance with New York contract law and provide adequate assurance of its future performance as required by the Bankruptcy Code in light of paragraph 7 of the Lease. With respect to arguments regarding whether the abatement provision in paragraph 7 of the Lease was fraudulently inserted into the Lease, the Court found after two days of evidentiary hearings on the terms of the Lease that while Greco may not have been aware of the insertion of the abatement provision in paragraph 7 of the Lease, the insertion of such provision was not fraudulent on the part of the Debtor.

      B.     <u>Debtor's Obligations under the Lease</u>.

          *1.     Terms of the Lease*.

Generally, a tenant's duty to pay rent is not suspended even if the landlord breaches its obligations under the lease, unless the lease contains an express provision declaring the circumstances under which the tenant may withhold its rent. *Westchester County Indus. Dev. Agency v. Morris Indus. Builders*, 278 A.D.2d 232, 232, 717 N.Y.S.2d 279, 280 (N.Y. App. Div. 2000), *appeal denied*, 96 N.Y.2d 792, 725 N.Y.S.2d 641 (N.Y. 2001). Pursuant to paragraph 7 of the Lease, an abatement of the tenant's obligations is expressly provided. Greco objects to the enforcement of the abatement provision on the grounds that such provision is ambiguous and unconscionable.

Whether a contract is ambiguous is a question of law to be determined by the courts. *Kass v. Kass*, 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 356 (N.Y. 1998). In making such a determination, the courts generally look within the four corners of the document and not to outside sources and "should examine the entire contract and consider the relationship of the parties and the circumstances under which it was executed." *Id*. (*quoting*, *Atwater & Co., Inc. v. Panama R.R. Co.*, 246 N.Y. 519, 524 (N.Y. 1927)). In examining the abatement provision of paragraph 7 of the Lease, the Court finds that while the language with respect to the abatement of the Debtor's obligations

"*hereunder*" in the event the Landlord should be in default of its obligations pursuant to any mortgage encumbering the Premises does not explicitly refer to the Debtor's obligations under the entire Lease, a review of the entire Lease where reference to the tenant's obligations "*hereunder*" appear elsewhere in such Lease, leads the Court to conclude that paragraphs referencing the tenant's obligations clearly indicates that paragraph 7 and other references to "hereunder" refers to the entire Lease.

With respect to the issue of unconscionability, a contract would be unconscionable if it is "so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforceable according to its literal terms", which generally require a showing that the contract was procedurally and substantively unconscionable when made. *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 791 (N.Y. 1988). By procedural unconscionability, there must be a lack of meaningful choice on the part of one of the parties, such as the existence of high-pressure tactics, deceptive practices and language in the contract, inequality of bargaining power, or an imbalance in the understanding and acumen of the parties. *Id*.; *Master Lease Corp. v. Manhattan Limousine Ltd.*, 177 A.D.2d 85, 89, 580 N.Y.S.2d 952, 954 (N.Y. App. Div. 1992), *appeal dismissed*, 80 N.Y.2d 893, 587 N.Y.S.2d 909 (N.Y. 1992). In a commercial setting, a party's lack of awareness of a contract provision does not support a determination of procedural unconscionability. *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d at 11, 537 N.Y.S.2d at 792. Moreover, with respect to substantive unconscionability, the doctrine of unconscionability has little applicability in a commercial setting because it is presumed that business men deal at arms length with relative bargaining power. *Master Lease Corp. v. Manhattan Limousine Ltd.*, 177 A.D.2d at 90, 580 N.Y.S.2d at 954. The Court has previously found that the insertion of the abatement provision in the Lease was not fraudulent. Greco's lack of awareness of the abatement provision did not rise to the level of procedural unconscionability. Moreover, both the Debtor and Landlord, including Greco, were represented by counsel and the Lease is a commercial transaction that was heavily negotiated by counsel for each of the parties. Therefore, there was no inequality of bargaining power and the parties had diverse interests and were dealing at arms length. Accordingly, the Court does not find the Lease to be unconscionable.

*2.     Debtor's Obligation to Pay Rent under New York Law*.

However, contracts may also be controlled in their operation and effect by general, fundamental maxims of the common law. *Riggs v. Palmer*, 115 N.Y. 506, 511, 22 N.E. 188, 190 (N.Y. 1889). "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." *Id. cf. McKay Prod. Corp. v. Jonathan Logan, Inc.*, 54 Misc.2d 385, 283 N.Y.S.2d 82 (N.Y. Sup. Ct. 1967) (defendant estopped from invoking the Statue of Frauds to avoid paying rent for the balance of the plaintiff's term of the lease after the defendant vacated the plaintiff's premises where the defendant negotiated a sublease with the plaintiff even though the defendant had no intention of entering into such sublease in order to produce a calculated business advantage for the defendant while leaving the plaintiff with no realistic opportunity of finding another sub-lessee for the remainder of the plaintiff's lease period).

Similarly, under general New York contract principles, a covenant of good faith and fair dealing is implied in all contracts. *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co., Inc.*, 30 N.Y.2d 34, 281 N.E.2d 142, 330 N.Y.S.2d 329 (N.Y.), *cert. denied*, 409 U.S. 875, 93 S. Ct. 125 (1972); *1-10 Indus. Assoc., LLC v. Trim Corp. of America*, 297 A.D.2d 630, 631, 747 N.Y.S.2d 29, 31 (N.Y. App. Div. 2002); *Friedman v. Egan*, 64 A.D.2d 70, 82, 407 N.Y.S.2d 999, 1006 (N.Y. App. Div. 1978). This leads to an implication of various negative covenants in each contract, such as:

> "neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, that one party will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on that party's part, and that an innocent party will be protected from overreaching adversaries."

22 N.Y. Jur. Contracts § 230 (2d ed.). Courts may take into consideration the fact that one construction of a contract would make the contract unreasonable and endeavor to give the construction most equitable to both parties instead of one construction that will provide one of the parties with an unfair or unreasonable advantage over the other. *Friedman v. Egan*, 64 A.D.2d at 82, 407 N.Y.S.2d at 1006. Furthermore, a party's performance will be excused where the adverse party has violated the covenant of fair dealing and good faith. 22 N.Y. Jur. Contracts § 408. A party that prevents or makes impossible the performance or happening of a condition precedent upon which that party's liability is dependent cannot take advantage of the nonperformance of the condition precedent. 22A N.Y. Jur. Contracts § 411. Generally, if it is shown that the nonperformance of a condition precedent was due to the conduct of a party to the contract, then the prevention of the performance of a condition precedent by such party excuses the nonperformance of the condition precedent. *Id*. Similarly, conduct by a party to a contract which frustrates and prevents performance by the other party excuses performance by the latter. 22A N.Y. Jur. Contracts §§ 408 and 409. The facts in this case are applicable to Sections 408, 409, and 411 as the Debtor has withheld payment to the Landlord knowing that it was the only source of funds which the Landlord used to pay the mortgage with respect to the Premises, and now seeks to have only one party of the Landlord use his own personal funds to cure a default that arises directly as a result of the Debtor's nonpayment under the Lease.

Moreover, even where there is a dispute regarding a lease, it is not inappropriate for a court to require a tenant-in-possession to continue to pay use and occupancy at the rate provided in the lease on each rental due date until resolution of the underlying action. *In re Keyboard Center, Inc.*, 9 B.R. 472, 474-5 (Bankr. Conn. 1981); *Englert v. Mahoney*, 258 A.D.2d 859, 860, 686 N.Y.S.2d 169, 170 (N.Y. App. Div. 1999). An occupant's obligation to pay the landlord for its use and occupancy of the premises is predicated upon the theory of quantum meruit. *Eighteen Assoc., L.L.C. v. Nanjim Leasing Corp.*, 257 A.D.2d 559, 559, 683 N.Y.S.2d 291, 292 (N.Y. App. Div. 1999). Furthermore, such obligation "is imposed by the courts for the purpose of bringing about a

just result without reference to the intention of the parties." 1 Williston, Contracts § 1:6, at 25 (4th ed.). *See also*, *Eighteen Assoc., L.L.C. v. Nanjim Leasing Corp.*, 257 A.D.2d at 559, 683 N.Y.S.2d at 292. The allowance for use and occupancy generally is measured by the reasonable value of such use and enjoyment, which ordinarily will be the contractual rent calculated on a pro rata basis, unless it can be shown that the contractual rent itself is clearly unreasonable. *S & W Holding Co. v. Kuriansky (In re W.L. Boffa, Inc.)*, 317 F.2d 666, 667 (2d Cir. 1963).

## Conclusion

While the Lease between the Debtor and the Landlord contains an express provision which provides for the abatement of the Debtor's obligations under the Lease, including the obligation to pay rent, the Debtor should not be able to benefit from this Lease provision where the Debtor (1) has created the circumstances to which the abatement provision would apply and (2) has not complied with the implied covenant of fair dealing and good faith in performing its obligations under the Lease. As principal of the Debtor, Gartner caused the Debtor to cease paying rent to the Landlord. Because the Landlord's sole source of revenue is the Debtor's rent payments under the Lease, without a stream of rent payment from the Debtor, the Landlord has been unable to make payments under its mortgage to Vermont Partners or any other mortgagee. There are no indications that the Debtor's failure to pay rent was due to the Landlord's breach of a provision of the Lease other than the Landlord's non-payment of mortgage payments. When the Debtor did make some payments to the Landlord during the spring of 2005, these payments fell short of the $36,000 per month the Debtor was obligated to pay the Landlord each month under the Lease. Moreover, Gartner caused such payments to be wired from the Debtor's account directly into the Landlord's bank account and on the same day, Gartner would have those funds wired from the Landlord to the relevant mortgagee.

Given that the Debtor and the Landlord were controlled by Gartner from January of 2005 until Gartner was restrained from conducting the operations of Steamroller LLC pending resolution of the State Court's February 21, 2006 Order to Show Cause, Gartner had control over whether the Debtor would be making payments to the Landlord, and in turn whether Steamroller would be able to meet its obligations with respect to the mortgagees, and be in compliance with the abatement provision of paragraph 7 of the Lease. So long as the Debtor complied with its rent payment obligations under the Lease, the Landlord would have been able to comply with its corresponding payment obligations under the mortgage. The Landlord's inability to comply with its mortgage obligations with respect to the Premises on an ongoing basis is a direct result of the Debtor's refusal to make the required rental payments under the Lease. In addition, because the Debtor continues to frustrate the ability of the Landlord to meet its obligations under the mortgage(s) by failing to pay rent on a going forward basis, the Debtor should not be allowed to take advantage of the provision relating to the abatement of the Debtor's obligations under the Lease. The Landlord should be excused from having to make the relevant payments under the mortgage as a condition precedent to the Debtor's obligation to make rent payments under the Lease under such circumstances.

Moreover, because the Debtor continues to remain in possession of the Premises, the Debtor should pay for its on-going use and occupancy during the time it remains on the Premises post-petition until such time the Debtor either assumes or rejects the Lease. Accordingly, under general

New York contract law, the Debtor's obligations under the Lease, including the obligation to pay rent, should not be abated and the Debtor should continue to pay all postpetition rents due under the Lease into the Debtor's counsel escrow account pursuant to the Court's December 7, 2005 Order. In addition, the Court sees no reason for deferring the commencement of the Debtor's obligation to pay postpetition rent to the Landlord to January 1, 2006.

       Based on the foregoing, the Debtor's motion for reconsideration of the Court's December 7, 2005 Order is denied as the Debtor has failed to show any mistake in the Court's December 7, 2005 Order or any other reason justifying relief from the operation of the Court's December 7, 2005 Order.

Dated: Central Islip, New York
       May 19, 2006                                By: ***/s/Dorothy Eisenberg***
                                                          Dorothy Eisenberg
                                                          United States Bankruptcy Judge